# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TASHANA MURRELL,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PENN PRESBYTERIAN MEDICAL** | : | |
| **CENTER,** | : | **NO. 18-1202** |
| *Defendant.* | : | |

## MEMORANDUM

Defendant Penn Presbyterian Medical Center has moved for summary judgment on its former employee's claims that it violated the Americans with Disabilities Act and the Family and Medical Leave Act in terminating Plaintiff shortly after she returned from continuous FMLA leave and was approved for intermittent FMLA leave and in failing to engage in the "interactive process" after Plaintiff requested to be placed on the day-shift as a purportedly reasonable accommodation for her alleged disability. Defendant argues that Plaintiff was terminated for three reasons unrelated to her FMLA leave or any purported request for accommodations, including an altercation with a patient, sending a threatening text to that patient, and accessing the private health information of that patient, despite not being involved in the patient's care. Defendant argues that Plaintiff has not shown that these reasons for termination were pretext, nor has she shown that Defendant did not act for the asserted nondiscriminatory reasons.

1

## I.    BACKGROUND

Plaintiff began working for Penn Presbyterian Medical Center ("PPMC") as

a nursing assistant in 2008. ECF No. 14-1 at 156. PPMC terminated Plaintiff on

September 12, 2017, stating in her termination letter that this decision was based

on (1) her altercation with a patient at the hospital, (2) her profane and threating

text message to a patient, and (3) her violation of hospital policy by inappropriately

accessing a patient's protected health information. ECF No.14-1 at 30. After her

termination, and after receiving a right to sue letter from the Equal Employment

Opportunity Commission ("EEOC"), Plaintiff filed a Complaint alleging violations

of the Americans with Disabilities Act ("ADA") based on discrimination, failure to

accommodate, and retaliation following her request for accommodations as an

allegedly qualified individual with a disability, as well as the Family and Medical

Leave Act ("FMLA"), based on retaliation following her return from continuous

FMLA leave and approval for intermittent FMLA leave. ECF No. 1.

During her employment with PPMC, Plaintiff had previously requested, and

been approved for, FMLA leave. ECF No. 14-1 at 86. Plaintiff understood that

the process by which an employee requested "out of work for three or more days"

for FMLA leave was to "pick up a form," since the request had to be "do[n]e . . . in

writing," and to "have [that form] back in a certain amount of time." *Id.* at 125.

Plaintiff took continuous FMLA leave from July 26 to August 26, 2017. *Id.* at 87,

161. After returning from continuous FMLA leave, Plaintiff applied and was
approved for intermittent FMLA leave for August 27, 2017 through February 26,
2018. *Id.* at 34, 76, 161.

Shortly after returning from continuous FMLA leave, on August 28, 2017,
Plaintiff sent a text message to her supervisor, Jennifer Nelson, stating, "Hi Jenn
how difficult would it be for me to come off nights and work morning weekend fri
sat Sunday I got really sick at work last night I just feel this is best for my health
and my work performance." *Id.* at 178. Nelson responded that day, providing her
with options for working the day shift that Friday, Saturday, and Sunday.[1]

On August 30, 2017, there was a loud incident involving Plaintiff, a patient,
and the patient's fiancé. *Id.* at 5, 82. Plaintiff was not involved with the patient's
care. *Id.* at 118. Plaintiff stated in her deposition that the patient and his fiancé
were arguing loudly in the patient's room when she entered, at which point she told
them she could hear them out in the hallway. *Id.* at 88. Plaintiff stated next that the
patient was angered by her statement and was "cussing and . . . being . . . real
disrespectful." *Id.* Plaintiff then stated that she noticed a male nurse sitting

---

[1] Defendant has stated that Plaintiff refused to accept this accommodation, ECF No. 14 at 13, but
Plaintiff's response is not visible on the text message exchange attached as an exhibit. ECF No.
14-1 at 178. Nelson's affidavit states that "Plaintiff did not accept th[e] options" provided on
August 28, 2017, but again cites the same text message exchange, where Plaintiff's answer is not
visible. *Id.* at 5.

3

outside the room, so she decided to leave the room. *Id.* After Plaintiff and the patient's fiancé left, the patient was transferred to another room, and the patient requested that his visitors be restricted. *Id.* at 163.

The next day, August 31, 2017, Plaintiff states that she decided to visit the patient again "to surprise him" and went to look up his room number by "punch[ing] in his name under my thing," but this only told her the floor the patient was on. *Id.* at 83. Plaintiff then stopped at the nurse's station and "ask[ed] what room [the patient was] in to the unit clerk that was there that day," and that unit clerk told her the patient's room number. *Id.*

On August 31, 2017, Plaintiff asked Nelson if she could be "taken off" her shift on Sunday, since "night shift is becoming really tuff [sic] for me." *Id.* at 182. On September 1, 2017, before Nelson had learned of any incident involving Plaintiff, Nelson responded asking if Plaintiff would like to "work Friday instead of Sunday," but Plaintiff stated, "that's 4 days [in] a row I don't think [I] can do that . . . [u]nless you can break one of those days up." *Id.* at 180, 182. Plaintiff also stated in her deposition that she met with Nelson in person and explained to her that Plaintiff was "tired now at night . . . [and] I really would like to be on day shift." *Id.* at 76. Plaintiff states that Nelson responded, "[we] don't have a need right now [for day shift employees]." *Id.* Outside of these communications, Plaintiff never made a request in writing to PPMC's Disability Management

4

department to work the dayshift, despite having previously requested and been approved for FMLA leave. *Id.*

On September 1, 2017, Nelson was told that Plaintiff was involved in "an altercation with a PPMC patient." *Id.* at 5. Nelson worked with Zene Colt from PPMC's Human Resources to investigate the alleged altercation at issue. *Id.* at 6. Nurses who were on duty the night of the altercation told Nelson that Plaintiff had visited a patient in his hospital room, argued with the patient "or the patient's girlfriend, was disruptive and loud with the patient, and was asked to leave the premises." *Id.* at 5. As Nelson learned more about what happened, she shared this information with her supervisor, Patty Baroni. *Id.* at 6.

Plaintiff was placed on administrative leave on September 1, 2017, "due to a patient complaint and suspected policy violation." *Id.* at 169. Plaintiff was informed there was a "fact-finding investigation taking place to review the[se] concerns." *Id*

As part of her investigation, Nelson contacted Denise Gilanelli, PPMC's privacy officer, to look into whether Plaintiff had improperly accessed the patient's chart when she went to visit him on August 31, 2017, the day after the incident. *Id.* at 6. Gilanelli determined that Plaintiff had accessed the "expanded details report portion of the patient's chart" at that time. *Id.* at 18. Gilanelli contacted Plaintiff

5

to discuss this access, and Plaintiff, believing she did not violate HIPAA or hospital policy, demonstrated for Gilanelli how she had attempted to access the patient's room number. *Id.* Gilanelli determined that, despite Plaintiff's belief, this conduct did constitute an "unauthorized access of the patient record." *Id.* at 171.

Nelson was also informed at that time that Plaintiff had sent a threatening text message to the patient after the incident. *Id.* at 5, 165, 167. During the investigation into Plaintiff's actions, Colt reviewed this text message, which was sent from Plaintiff's phone to the patient, and determined it was sent by Plaintiff. *Id.* at 12. Plaintiff disputed in her deposition that she authored the text message, but she admitted that the text message was sent from her cellular telephone. [2] *Id.* at 84.

As part of this investigation, Nelson received an email from Esther Wood, a nurse manager at PPMC, on September 7, 2017, informing her that the patient had told her that Plaintiff had visited him and was "arguing with his girlfriend so the staff asked her to leave and she left." *Id.* at 167. Wood told Nelson that after the patient was transferred to another room, the patient received a threatening text

---

[2] "Q. Did you send this text message? A. I did not send this text message. No. I did not send this text message. Q. But this is certainly from your phone, correct? A. This is definitely from my phone. Q. Your testimony is that your mother sent this message? A. My mother sent this message." ECF No.14-1 at 84.

6

from Plaintiff, which he reported to the staff, and the staff decided to "opt[ him] out" of permitting visitors to know his location in the hospital. *Id.* at 5, 167. Nelson met with Colt on September 11 and 12, 2017 to discuss the results of their investigation. *Id.* at 6. Nelson, in consultation with Colt, decided that, based on what she had learned about Plaintiff's "disruptive behavior with a patient, . . . threatening text message to the patient, and . . . HIPAA and privacy policy violation," Plaintiff should be terminated. *Id.* at 7.

Plaintiff was terminated on September 12, 2017, effective immediately. *Id.* at 30. The stated bases for Plaintiff's termination were (1) her altercation with a patient, (2) her profane and threating text message to a patient, and (3) her violation of hospital policy by inappropriately accessing a patient's protected health information. *Id.* at 30.

## II. STANDARD

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); Fed. R. Civ. P. 56(c). As the Supreme Court has emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986) (footnote omitted)).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986)) (emphasis added). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*; *see Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 909 (3d Cir. 1984) (instructing that "conflicts of credibility should not be resolved on a hearing on the motion for summary judgment unless the opponent's evidence is too incredible to be believed by reasonable minds.").

## III.  DISCUSSION

Plaintiff alleges Defendant is liable for discrimination, failure to accommodate, and retaliation in violation of the ADA, claiming that she was a qualified individual with a disability as defined by the ADA, her request for a reasonable accommodation was summarily denied without any meaningful interactive process, and that the close temporal proximity of Plaintiff's request for accommodations and her termination indicates that the termination was for "untrue

8

and pretextual reasons." ECF No. 1 at ¶¶ 28-32. Plaintiff additionally alleges

retaliation in violation of the FMLA, alleging that Defendant is an employer under

the FMLA, Plaintiff was an FMLA employee, Plaintiff exercised her rights under

the FMLA as she had requested and was approved for leave arising out of her

"serious health issues," and within a close temporal proximity of Plaintiff's leave,

Defendant terminated Plaintiff for "untrue and pretextual reasons." ECF No. 1 at

¶¶ 33-39.

## *A. Discrimination in Violation of the ADA*

The ADA bars an employer from "discriminat[ing] against a qualified

individual on the basis of disability in regard to job application procedures, the

hiring, advancement, or discharge of employees, employee compensation, job

training, and other terms, conditions, and privileges of employment." 42 U.S.C. §

12112(a). The Third Circuit has applied the *McDonnell Douglas* framework to

ADA claims. *See Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). This

framework requires a plaintiff to establish a prima facie case of discrimination

under the ADA, showing "(1) [plaintiff] is a disabled person within the meaning of

the ADA; (2) [plaintiff] is otherwise qualified to perform the essential functions of

the job, with or without reasonable accommodations by the employer; and (3)

[plaintiff] has suffered an otherwise adverse employment decision as a result of

discrimination." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir.1999) (quoting *Gaul v. Lucent Tech.*, 134 F.3d 576, 580 (3d Cir.1998)).

If the plaintiff is able to establish a prima facie case of discrimination, the burden then shifts to the employer to "offer evidence of a legitimate nondiscriminatory reason for the action." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010) (internal quotation marks omitted) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "If the defendant states such a reason, the presumption of discrimination raised by the prima facie case is rebutted, and plaintiff must show by a preponderance of the evidence that the defendant's explanation is actually a pretext for discrimination." *Mercer v. Se. Pennsylvania Transit Auth.*, 26 F. Supp. 3d 432, 445 (E.D. Pa. 2014), aff'd sub nom. *Mercer v. SEPTA*, 608 F. App'x 60 (3d Cir. 2015) (citing *Anderson*, 621 F.3d at 271).

To establish that the employer's justification for the adverse employment action was merely pretext for discrimination, plaintiff must provide evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir.2013) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994)). However, plaintiff "cannot simply show

that the employer's decision was wrong or mistaken." *Fuentes*, 32 F.3d 759. This evidence must "support an inference that the employer did not act for its stated reasons." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995). "A plaintiff can satisfy that burden at the summary judgment stage by 'demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's explanation for its action 'that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Mercer*, 26 F. Supp. 3d at 444 (quoting *Burton*, 707 F.3d at 427).

Defendant argues first that Plaintiff has not made out a prima facie case of discrimination based on her alleged disability. For the purposes of its Motion for Summary Judgment, Defendant PPMC "does not dispute that Plaintiff had a disability or that Plaintiff was otherwise qualified to perform the essential functions of her job." ECF No. 14 at 16. Defendant disputes only that "Plaintiff suffered an adverse employment decision because of any disability she may have had." *Id.* Defendant argues that Plaintiff relies on her subjective belief that her disability was the basis for her termination but does not present evidence showing that Gilanelli, Nelson,[3] or Colt had knowledge of her disability, nor evidence of

---

[3] Plaintiff argues that Nelson had knowledge of Plaintiff's disability as her supervisor, since Plaintiff had just returned from FMLA leave. ECF No. 19 at 13. Plaintiff stated at her deposition that she did not discover that she had fibromuscular dysplasia ("FMD") until August 2017, during her continuous FMLA leave, and that she applied for intermittent FMLA leave after discovering she had FMD. ECF NO. 14-1 at 87. Nelson does not state in her affidavit whether

11

any motivation that Nelson had to terminate Plaintiff because of her disability. Defendant further provides a legitimate, nondiscriminatory reason for Plaintiff's termination, arguing she was terminated based on her altercation with a patient at the hospital, her profane and threating text message to a patient, and her violation of hospital policy by inappropriately accessing a patient's protected health information. Defendant argues that Plaintiff has failed to show that this reason was pretext for discrimination.

In response, Plaintiff recognizes that she must "establish causation between her disability and termination" but argues only that the "close proximity between [Plaintiff's] request for accommodations (which includes her brief leave of absence, request for intermittent time off after her return from leave, and her request [] to work a different shift) and the adverse action at issue is supportive of causation," since Plaintiff "was terminated from employment within days of her request for accommodations." ECF No. 19 at 11.

Plaintiff has failed to show that she has "suffered an otherwise adverse employment decision **as a result of discrimination**." *Taylor*, 184 F.3d at 306 (emphasis added). As Plaintiff notes, "[c]lose 'temporal proximity,' between the

___

she was aware that Plaintiff had a disability. Because the Court is to construe the facts in the light most favorable to Plaintiff, the Court assumes that Nelson had knowledge of Plaintiff's disability, but this does not change the Court's analysis.

12

protected status or action by the employee and the adverse action by the employer, is suggestive but not determinative of causation." *Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 332 (E.D. Pa. 2018) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)).

Plaintiff does not point to any reason, motivation or link between her alleged disability and her termination, outside of Plaintiff's subjective belief that they are related and the close temporal proximity between her purported request for accommodations and her termination. Even Plaintiff's deposition belies her claim that her termination was a result of discrimination. Plaintiff stated at her deposition that Nelson, Gilanelli, and Baroni were the three individuals at PPMC who discriminated against her. ECF No. 14-1 at 63. Plaintiff stated that Gilanelli discriminated against her by "ma[king] a judg[]ment on [her] that [she] did something that [she] didn't do before." *Id.* at 64. Plaintiff stated that Gilanelli "saw exactly what [Plaintiff] did [when she accessed the patient's chart]. . . [a]nd once [she] showed [Gilanelli] what [she] did, [Gilanelli] still passed judgment on [her] and accused [her] of doing something that [she] didn't do." *Id.* Gilanelli has stated in her affidavit that Plaintiff "accessed the [patient's] expanded details report," which "violated HIPAA [and] hospital policy." ECF No. 14-1 at 18-19. Plaintiff has additionally not presented any evidence to show that Gilanelli was aware of her alleged disability during the relevant period.

13

When questioned at her deposition what discriminatory acts Nelson committed, Plaintiff stated that Nelson was "very short," and did not "give [Plaintiff] a chance." *Id.* at 73. Plaintiff further stated that Nelson "did exactly was she was supposed to do, what she was told to do." *Id.* at 74. Plaintiff cited no other reason or motivation that Nelson would have to terminate Plaintiff because of her alleged disability. Even if Nelson were aware of Plaintiff's alleged disability,[4] this cannot support Plaintiff's claim that Plaintiff's termination was a result of discrimination.

Lastly, when questioned at her deposition what discriminatory acts Baroni committed, Plaintiff stated that she "didn't even have contact with [Baroni]. . . . it was just a feeling [Plaintiff] had, just seeing [Baroni's] name at the head of [her] termination paper." *Id.* at 79. Plaintiff presented no other evidence outside of her testimony showing causation between her status as disabled and her termination. The Court therefore finds that, even viewing the facts in the light most favorable to Plaintiff, there is no genuine dispute as to any material facts relating to whether Plaintiff's termination was a result of discrimination based on Plaintiff's disability, and Plaintiff has presented no evidence showing that her termination was

---

[4] *See* supra n. 3.

14

discriminatory. Therefore, Plaintiff has failed to make out a prima facie case of discrimination under the ADA.

However, even if Plaintiff had presented evidence to successfully make out a prima facie case of discrimination under the ADA for her termination, Defendant has offered evidence of a legitimate nondiscriminatory reason for the adverse action. Defendant has presented evidence showing that Plaintiff was terminated after an investigation revealed that Plaintiff was "yelling and demonstrating disruptive behavior [in a patient's room] leading to [Plaintiff] being asked to leave the premises," after it was "confirmed that a text message sent from [Plaintiff's] phone number to the patient contained profanity and threatening comments," and because "an audit conducted by [PPMC's] Privacy Officer indicated that on 8/31/17, [Plaintiff] accessed the patient's medical record without authorization which is a violation of hospital policy." ECF No. 14-1 at 30.

Plaintiff has not shown that this explanation is pretext for discrimination. Plaintiff has not provided any evidence that would allow a factfinder to "disbelieve the employer's articulated legitimate reasons . . . or[] believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Mercer*, 26 F.Supp.3d at 445. Plaintiff has stated that she was not disruptive when she was in the patient's room, that she did not access the patient's expanded file, and that she was not the author of the threatening text

15

message to the patient. ECF No. 14-1 at 74, 82-83, 84. However, Plaintiff "cannot simply show that the employer's decision was wrong or mistaken." *Fuentes*, 32 F.3d at 765. Plaintiff must instead present evidence to "support an inference that the employer did not act for its stated reasons." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir.1995). Plaintiff has presented no evidence to show that Defendant did not act for the three stated reasons and thus has failed to present evidence supporting a claim for discrimination under the ADA. Therefore, this claim must be dismissed.

## *B. Failure to Accommodate in Violation of the ADA*

Plaintiff has also stated that PPMC violated the ADA by failing to accommodate her request for reasonable accommodations based on her disability. "The adverse employment decisions barred by the ADA include 'not only adverse actions motivated by prejudice and fear of disabilities, but also . . . failing to make reasonable accommodations for a plaintiff's disabilities.'" *Mercer*, 26 F.Supp.3d at 445 (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir.1999)). The ADA defines discrimination against a qualified individual on the basis of disability to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the

16

business." 42 U.S.C. § 12112(b)(5)(A). "An employer's denial of a request for a reasonable accommodation is a discrete act of discrimination that is an independently actionable unlawful employment practice under the ADA . . . akin to wrongful termination or failure to hire." *Mercer*, 26 F.Supp.3d at 445 (citing 42 U.S.C. § 12112(b)(5)(A)).

The Third Circuit has held that "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith" and must engage in an "interactive process." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312 (3d Cir. 1999) (quoting *Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir.1997)). "To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Taylor*, 184 F.3d at 319–20.

Defendant argues that the text messages that Plaintiff sent to Nelson asking to work the day shift, stating that this change would be "best for [her] health and [her] work performance," were not a request for accommodations or assistance for her disability because they are too vague. ECF No. 14 at 24. Defendant argues

17

that these "requests" do not provide information on Defendant's "disability and the desire for an accommodation for that disability." *Id.* at 24-25. Defendant additionally argues that even if these texts were construed as requests for accommodation, Nelson did attempt to accommodate Plaintiff's request but Plaintiff was not satisfied with these accommodations. ECF No. 14 at 25.

Plaintiff argues that her request was "simply denied without any further inquiry," and that Defendant did not make reasonable efforts to assist Plaintiff's request. ECF No. 19 at 10. Plaintiff cites her deposition testimony to argue that Nelson "only offered to switch [Plaintiff] for *one* particular shift," and when Plaintiff "attempted to follow up as to whether her shift change could be accommodated on a permanent basis, she was unequivocally told that there was no need for additional day shift aides." *Id.* Plaintiff argues that she "knew" Nelson's statement that there was no need for additional day shift aides "was untrue due to her filling in on day shift multiple times." *Id.*

Two days prior to the incident with the patient, and two days after Plaintiff had come off continuous FMLA leave, Plaintiff requested via text message "to come off nights and work morning weekend fri sat Sunday," explaining that she "got really sick at work last night" and she "just feel[s] this is best for [her] health and [her] work performance." ECF No. 14-1 at 178. Nelson responded that day, providing her with options for working the day shift that Friday, Saturday, and

18

Sunday. *Id.* Then, on August 30, 2017, Plaintiff was involved in an incident with a patient and on August 31, 2017, Plaintiff accessed the patient's chart. *See* supra pp. 5-6. On the evening of August 31, 2017, Plaintiff asked again to be "taken off" for Sunday, and Nelson responded the next morning stating that Plaintiff could work Friday instead of Sunday. *Id.* at 180. On September 1, 2017, Nelson was informed of the incident involving Plaintiff and, based on a pending investigation into the incident and other potential policy violations, Plaintiff was placed on administrative leave. ECF No. 5, 169. Plaintiff also states in her deposition that she had a discussion with Nelson about potentially moving to day shift, but that Nelson told her there was no availability for additional day-shift employees. *Id.* at 76. [5]

Plaintiff has previously requested, and was approved for, FMLA leave. ECF No. 14-1 at 125. Plaintiff admitted that she understood the process for requesting FMLA leave, which she noted required her to fill out a written form and return it before a certain time. ECF No. 14-1 at 125. While Plaintiff is not required to "formally invoke the magic words 'reasonable accommodation,' the notice nonetheless must make clear that the employee wants assistance for his or her

---

[5] Although Plaintiff does not state when this conversation took place, it seems to have taken place after Plaintiff returned from continuous FMLA leave, on August 26, 2017, and before Plaintiff was placed on administrative leave, on September 1, 2017. ECF No. 14-1 at 76.

disability." *Taylor*, 184 F.3d at 313. "[T]he employer must know of both the disability and the employee's desire for accommodations for that disability." *Id.*

Even if the Court assumes that Nelson had knowledge of Plaintiff's allegedly qualifying disability, the text messages Plaintiff sent to Nelson do not provide enough information for Nelson to be on alert that Plaintiff was requesting an FMLA accommodation to permanent day shifts based on a qualifying disability. The text messages requested only short-term accommodations, and Nelson immediately provided short-term solutions based on these requests. Nelson made a good faith effort to accommodate Plaintiff's request, responding quickly and with suggestions for accommodations.

Plaintiff's deposition testimony that Plaintiff requested permanent accommodations for her disability in person and Nelson told her that there was no availability on day shift is similarly not sufficient to show lack of a good faith effort to assist Plaintiff in seeking accommodations. Plaintiff states in her deposition that when she met with Nelson she "cannot recall if [she] mentioned [her] medications," she "just really explained to her that . . . [she was] tired" and "really would like to be on day shift." ECF No. 14-1 at 76. Plaintiff did not submit a written request for accommodations with the Disability Management department, claiming she felt she needed to "speak[] to [her] manager first," and that she "may have [gone] th[e] route" of filing a written request for day-shift

work, but she was "fired shortly" after and did not get the chance. ECF No. 14-1 at 76. Plaintiff's conversation with Nelson, even construed in a light most favorable to the Plaintiff, does not show that Plaintiff informed PPMC of her disability and the desire for accommodations *based on that disability*, nor that PPMC failed to participate in the interactive process.

Plaintiff has not shown how Nelson's initial reaction that there was no day-shift availability demonstrates that Nelson or PPMC did not make a good faith effort to assist Plaintiff in seeking accommodations, especially considering that Plaintiff was placed on administrative leave for a nondiscriminatory reason within days of this purported request for accommodations. Defendant cannot be said to have failed to communicate regarding any alleged request for accommodations considering the timing of the administrative leave and subsequent termination for a legitimate and nondiscriminatory reason. Therefore, Defendant is entitled to judgment as a matter of law on the ADA claim based on failure to accommodate.

### C. Retaliation in Violation of the ADA

Plaintiff has additionally alleged that Defendant violated the ADA by retaliating against her for requesting accommodations for a disability. Courts apply the burden-shifting framework established in *McDonnell Douglas Corp.* in ADA retaliation cases. *Shaner v. Synthes (USA)*, 204 F.3d 494, 500-01 (3d Cir. 2000). Under this framework, "[t]o establish a prima facie case of retaliation under

21

the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). "If an employee establishes a prima facie case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. *Id.* "If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.*

In the Complaint, Plaintiff has stated that she was terminated within a close temporal proximity of her request for reasonable accommodations, indicating that Plaintiff has alleged that her request for accommodations via text and in person is the protected activity for which she claims Defendant retaliated against her. ECF No. 1. Defendant argues that Plaintiff did not engage in protected activity, because she did not "request a reasonable accommodation with enough specificity to identify both the disability and Plaintiff's desire for assistance with that disability." ECF No. 14 at 27. Defendant argues that even if she had, Plaintiff cannot show that the legitimate, nonretaliatory reason Defendant presented for her termination was pretext. *Id.*

Plaintiff claims that her request for accommodation was protected because Defendant was on notice of her disability and the text message "specified that there was an issue with the new medication she was taking," which Plaintiff argues means that Nelson must have known the request was "related to [Plaintiff's] serious health condition." ECF No. 19 at 13. Plaintiff additionally states that she "made the matter clear when [Nelson and Plaintiff] spoke in person . . . that [Plaintiff] needed to switch . . . to day shift work because of a side effect of her medication." *Id.* Plaintiff further argues that the timing between her request for accommodation and her termination is "sufficient to support an inference of causation." *Id.*

The Court has already determined that Plaintiff's communications with Nelson regarding (1) short-term shift changes and (2) a more permanent shift to day shift work were not related specifically to accommodations for a disability to qualify as protected requests for accommodation. *See* supra pp. 19-21. Yet, even if the Court assumes that these communications with Nelson were a proper request for accommodations such that Plaintiff could be considered to have engaged in protected activity, Plaintiff has failed to identify any causal connection between the purportedly protected activity and her termination outside of their close temporal proximity. "Even if timing alone could ever be sufficient to establish a causal link, . . . the timing of the alleged retaliatory action must be 'unusually suggestive' of

23

retaliatory motive before a causal link will be inferred." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). If Plaintiff had not been placed on administrative leave for a separate incident within days of her purported request for accommodations, this Court could potentially find that the close timing of the purported request and termination indicated a causal connection. However, the timing in this matter is not "unusually suggestive" of a retaliatory motive because Plaintiff's interaction with a patient served as an independent reason for placement on administrative leave and subsequent termination.

Even assuming Plaintiff made a protected request for accommodations and the temporal proximity alone was sufficient to show a causal connection, this would only satisfy Plaintiff's prima facie burden to show retaliation. As explained previously, Plaintiff has not produced any evidence that would support an inference that PPMC did not act for its stated reasons, nor shown any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in PPMC's explanation for her termination "that a reasonable factfinder could rationally find [PPMC] 'unworthy of credence.'" Therefore, Defendant is entitled to judgment as a matter of law on Plaintiff's ADA Retaliation claim.

## D. Retaliation in Violation of the FMLA

Like a retaliation claim under ADA, "to prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-

24

qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012). If Plaintiff makes out a prima facie case, the burden shifts to Defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse employment decision. *Id.* at 302. If Defendant meets this "minimal burden," Plaintiff must then show that this proffered justification is mere pretext for retaliation by "point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve [the defendant's] articulated legitimate reasons.'" *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994)).

In the Complaint, Plaintiff indicates that that Defendant retaliated against her for "exercise[ing] her rights under the FMLA, as she requested, and was approved for [FMLA] leave arising out of her serious health conditions." ECF No. 1 at 9. Plaintiff did request and was approved for both continuous FMLA leave from July 26, 2017 to August 23, 2017 and intermittent FMLA leave from August 27, 2017 to February 26, 2018.⁶ ECF No. 14-1 at 34, 76, 161. Plaintiff's only argument supporting a causal connection is the temporal proximity between her return from

---

⁶ It is unclear if Plaintiff is arguing that the FMLA qualifying leave is: (1) her continuous FMLA leave from July 26 to August 26, 2017 or (2) her intermittent FMLA leave for which she was approved from August 27, 2017 through February 26, 2018. As Plaintiff requested and was approved for both the continuous and intermittent FMLA leave, the Court will consider them together. ECF No. 14-1 at 34.

continuous FMLA leave or the approval of intermittent FMLA leave and her termination. ECF No. 19 at 16-17. As stated above, even if temporal proximity alone were sufficient to show that these two events were causally related, Defendant has provided a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff has failed to present evidence to show that Defendant's reason should be disbelieved or that it is mere pretext for retaliation. See supra. Plaintiff has argued only that Defendant's decision to terminate her "was wrong or mistaken," but this is insufficient to show pretext. *Ross v. Gilhuly*, 755 F.3d 185, 194 n. 13 (3d Cir. 2014). Defendant is therefore entitled to judgment as a matter of law on Plaintiff's FMLA retaliation claim.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted. An appropriate order will follow.

**BY THE COURT:**

DATE: 5-17-2019

CHAD F. KENNEY, JUDGE